

Sari E. Kolatch

Direct:   212-381-8729
Email:   skolatch@ctswlaw.com

January 3, 2025

**Via ECF**

Honorable Jeannette A. Vargas
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, NY 10007

      Re:    *White Beech SNC, LLC v. Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.*
            Case No. 1:18-cv-4148 (PGG)(HBP)

Dear Judge Vargas:

      This firm represents plaintiff White Beech SNC, LLC ("Plaintiff" or "White Beech") in the above referenced action. We submit this letter jointly with counsel for Defendants Petróleos de Venezuela, S.A. ("PDVSA") and PDVSA Petróleo, S.A. ("PPSA," together with PDVSA, "Defendants"), in response to the Court order, dated December 12, 2024. (Dkt. No. 37.)

**Plaintiff's Position**

      The docket contains the correct names and contact information for counsel for both parties.

      This is an action to enforce a note and guarantee in the amount of $25,001,065.96, plus interest, against PDVSA, as Issuer, and PPSA, as Guarantor, each of which unconditionally guaranteed payment and performance of the note in favor of the noteholder pursuant to a Note Agreement among Issuer, Guarantor and Noteholder.

      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a) in that the action is between a citizen of a state in the United States and a citizen of a foreign state, or a foreign state, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. Plaintiff is a single member LLC. Its sole member is a citizen of Delaware. The Court also has jurisdiction pursuant to 18 U.S.C. § 1330 (a) and 28 U.S.C.§ 1367 (a). PDVSA is a foreign corporation owned directly by the Republic of Venezuela and therefore PDVSA is an "agency or instrumentality" of a foreign state. § U.S.C. 1603 (b). PDVSA has unconditionally waived sovereign immunity under Section 9.15 (c) of the Note Agreement in any action or proceeding arising out of the Note and Note Agreement. The Court also has jurisdiction over PPSA pursuant to 18 U.S.C. § 1367(a) because the claims against PPSA as

C|T|S|W

Honorable Jeannette Vargas
January 3, 2025
Page 2 of 3

Guarantor are so related to the claims against PDVSA that they are part of the same case or controversy. Finally, the Court also has personal jurisdiction over the Defendants because they explicitly consented to the jurisdiction of this Court with respect to any action or proceeding arising out of or relating to the Note Agreement or Note.

As discussed further below, this case has been stayed since February 2019. As a result, there are no existing deadlines, due dates, conference dates, outstanding motions or pending appeals.

The discovery period for this matter ended in January 2019. As set forth in a letter to Judge Gardephe, dated July 11, 2019 (Dkt. No. 27), Defendants did not produce any documents, respond to interrogatories, or produce witnesses for depositions in response to the Request for Production of Documents, Interrogatories and Rule 30 (b)(6) deposition notices served by Plaintiff. Instead, Defendants agreed to stipulate to the relevant facts in lieu of discovery. That stipulation was finalized and executed by Defendants' corporate representative in January 2019. Defendants opted not to serve discovery on Plaintiff.

In January 2019, the parties had negotiated an amicable resolution to this dispute. We were in the final stages of documenting the settlement when, on January 28, 2019, the U.S. Treasury Department's Office of Foreign Asset Control ("OFAC") designated PDVSA as a Specially Designated National and Blocked Person ("SDN"). As set forth in a status report from Defendants to Judge Gardephe on February 1, 2019, as a result of the designation, all property and interests in property of PDVSA that "are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person … are blocked and may not be transferred, paid, exported, withdrawn or otherwise dealt in." The Executive Order further prohibits any U.S. person from receiving funds from PDVSA. These restrictions also apply to PDVSA's subsidiary PPSA. (*See* Dkt. No. 30.)

There is no exception for settlement of litigation. OFAC regulations expressly prohibit U.S. persons from entering into a settlement agreement or otherwise affect property or interests of property that is blocked, absent a specific license from OFAC. 31 C.F.R. § 591.506 (c). Accordingly, this matter could not (and still cannot) be settled absent a specific license from OFAC.

On February 4, 2019, Judge Gardephe ordered Plaintiff to submit a letter explaining why the case should not be stayed. On February 6, 2019, Plaintiff informed the Court that it did not object to a stay. (Dkt. No. 32.) That same day, Judge Gardephe issued an order which stayed the action and provided that either party may seek relief from the stay at any time. (Dkt. No. 33).

By separate letter Plaintiff intends to request relief from the stay, but given Defendants' position below and their description of recent developments in Venezuela, Plaintiff does not oppose Defendants' request and is prepared to wait 60-days before seeking to lift the stay.

C|T|S|W

Honorable Jeannette Vargas
January 3, 2025
Page 3 of 3

**Defendants' Position**

Defendants respectfully request that the Court extend the stay of these proceedings for the next 60-days.

This case has been stayed since February 2019 and has remained stayed in light of the extraordinary political situation in Venezuela. Recent developments warrant an extension of the stay. The Venezuelan people and numerous governments, including the United States, have increased the pressure on the Maduro regime to recognize the overwhelming victory of President-Elect Edmundo González Urrutia in the July 28, 2024 election. On November 19, 2024, Secretary of State Antony Blinken explicitly recognized González as Venezuela's President-Elect.[1] More recently, the United States imposed new sanctions on Mr. Maduro's associates "to incentivize democratic actions in Venezuela," and a "senior administration official" (the White House's description) told the press that "these policies of continuing to support the will of the Venezuelan people are going to remain central to how the Biden administration engages with the issue of Venezuela."[2] Under Venezuelan law, the new presidential term in Venezuela commences on January 10, 2025. Thus, while it is too soon to say whether Maduro can be persuaded to obey the law and cede power to his duly-elected successor, that question should be answered relatively soon. A transition could open the possibility for alternative resolution of various claims against Defendants. Therefore, Defendants respectfully request the Court to continue the stay and direct the parties to submit a joint status report 60 days from the date of this letter.

Respectfully submitted,

*Sari E. Kolatch*

Sari E. Kolatch

cc:  All counsel of record (via ecf)

---

[1] *See* Transcript of Background Press Call on Venezuela (Nov. 27, 2024) (the "Nov. 27 White House Transcript"), https://www.whitehouse.gov/briefing-room/press-briefings/2024/11/27/background-press-call-on-venezuela/ ("[R]ecently, we've also proclaimed that we view Edmundo Gonzalez Urrutia to be the president-elect in Venezuela.").
[2] November 27 White House Transcript.